THE TOLEDO AND WABASH RAILROAD CO. *v.* FOWLER.

PLEADING—PRACTICE.—A complaint against a railroad company for stock killed on the road where it was not fenced, will sufficiently aver the want of fence if it allege "that said railroad was not, at the time and place aforesaid, fenced in by said defendant in manner and form as in the statute provided," and under such averment, proof may be made that the road had not been duly fenced in at all, or, if it had, that the fence had not been properly maintained.

RAILROADS—FENCES.—The statute requiring railroads to be kept fenced, is not intended to change the common law rule as to the duty of the owner of cattle, nor merely to give them compensation for animals killed or injured on the track where the road is not fenced, but chiefly as a police regulation, for the benefit of the public, to secure safety and freedom from obstructions to the passage of carriages along the track.

SAME.—Where a railroad company has caused its road to be securely fenced, and has exercised reasonable care and vigilance to keep it so, and the fence is thrown and left down by third persons, without the authority or knowledge of the company, whereby cattle stray upon the track and get killed or injured, before the company has notice, the company is without fault, and not liable for the stock thus killed or injured.

APPEAL from the *Wabash* Common Pleas.

WORDEN, J.—This was an action by *Fowler* against the

The Toledo and Wabash Railroad Co. *v.* Fowler.

company to recover for stock killed on the road where it was not fenced. The complaint contained four paragraphs, to each of which a demurrer was overruled. The defendant answered in three paragraphs, the first being the general denial, demurrers being sustained to the second and third. Trial, verdict and judgment for the plaintiff.

The appellant claims that error was committed in overruling the demurrers to the several paragraphs of the complaint, because it was not sufficiently averred that the road was not fenced. Each paragraph of the complaint alleged "that said railroad was not, at the time and place aforesaid, fenced in by said defendant in manner and form as in the statute provided." This allegation seems to us to be sufficient.

The second and third paragraphs of the answer were as follows:

"2. For further answer, the defendant says, that the killing in the several paragraphs of the complaint mentioned, was the result of the carelessness of the said plaintiff himself in leaving the bars, known as *Austin's* bars, open, on the railroad, whereby the horses in question got into the road and were killed.

"3. The defendant further says, that the place where the horses injured, and in the several paragraphs mentioned, got on the railroad track, was what is sometimes called, *Austin's* bars, in the railroad fence erected on land said to belong to *Mrs. Burgett;* that said bars were chiefly used by the plaintiff and *Thomas Austin;* that the bars were frequently left down and thrown down without the consent of the defendent, and against her wishes; that the defendant's section men passed over the road daily to repair, and watched the said bars as closely as possible; that at the times of the several injuries in the different paragraphs mentioned, the horses killed got on the railroad track at said bars before the road (company)

knew they were down, and before the company had notice and time to repair."

The statute making railroad companies liable for stock killed upon the road provides that, the act shall not apply to any railroad securely fenced in, and such fence properly maintained by such railroad company. We think the allegation in the complaint that the road was not at the time and place, fenced in by the defendant in manner and form as provided for by the statute, admits of proof that the road had not been duly fenced in at all, or if so, that it had not been properly maintained.

The second paragraph of the answer seems to be defective in not alleging that the road had been securely fenced. The "bars, known as *Austin's* bars," which the plaintiff left "open, on the railroad," do not clearly appear to have been in a fence inclosing the railroad. If the pleading had alleged that the defendant had securely fenced the road, and that the plaintiff himself had left down bars in the fence thus made, whereby his horses got upon the track and were killed, it is difficult to see on what ground he could recover.

The third paragraph of the answer seems to be open to the same objection. The allegation in that is that the place, &c., "was at what is sometimes called *Austin's* bars in the railroad fence, erected on land said to belong to *Mrs. Burgett.*" The fence here mentioned is called the railroad fence, but that could hardly be taken as equivalent to an allegation that the road had been securely fenced. Outside of this objection, we think the paragraph in question is good. If the company had securely fenced in her road, and if, as alleged, bars in the fence were thrown and left down, against the consent and wishes of the company, and if the employes of the company passed over the road daily to repair, and watched the said bars as closely as possible, and if the animals were killed before the company, having exercised the diligence above stated,

had notice that the bars were down, the plaintiff is not entitled to recover.

The common law rule, in the absence of any statute controlling it, is that the owner of cattle is bound to confine them upon his own lands. *Myers* v. *Dodd*, 9 Ind. 290. The statute in question was not intended to give the owners of cattle the right to depasture them on the ground of railroad companies where the road is not fenced; nor was it intended simply to give them compensation for animals killed or injured on the track where the road is not fenced. It was designed chiefly, as a police regulation, for the benefit of the public, to secure, as far as possible, safety and freedom from obstruction to the passage of carriages along the track. The penalty of not fencing, as was said in the case of *The New Albany and Salem Railroad Co.* v. *Tilton*, 12 Ind. 3–6, "is the payment to the owner the value of the animal killed. It is, in that respect, better calculated to accomplish the desired end, than a fine paid to the public might be." See cases collected on this point in note 1 to p. 522, 1 G. & H. Safety to the public being the chief design of the statute, it becomes material to inquire what is a proper maintainance of a fence where one has been duly erected. In the case of the same appellant v. *Daniels*, 21 Ind. 256, it was held that where a road had been securely fenced, and the fence destroyed by unavoidable accident, it should be deemed properly maintained, if the company repaired it within a reasonable time after it became insecure. So, we think, where a railroad company has caused its road to be securely fenced in, and has exercised reasonable care and vigilance to see that the fence is duly kept up, and the fence is thrown and left down by third persons without the authority or knowledge of the company, whereby cattle stray upon the track and get killed before the company has notice, the company is without fault; it has discharged its duty to the public, and is not liable, under the statute, for the

stock thus killed. There is a material difference between the pleading in this case, and that cited from 21 Ind., *supra*. There is an allegation of diligence and vigilance on the part of the company to see that the fence was kept up, viz: "that the defendant's section men passed over the road daily to repair, and watched the said bars as closely as possible." There was no equivalent allegation in the other case.

We have thus expressed our views on these pleadings, because the questions involved will, as we suppose, arise in the further progress of the cause, when they can be amended, if the parties desire to amend. The judgment below will have to be reversed on account of a verbal instruction given to the jury under substantially the same circumstances as in the case of the same appellant against *Daniels, supra*.

*Per Curiam.*—The judgment below is reversed, with costs, and the cause remanded.

*William Z. Stuart,* for the appellant.