The Baltimore, Pittsburgh and Chicago R. W. Co. *v.* McClellan.

RAILROAD.—*Killing Stock.*—*Contract to Fence.*—*Conveyance.*—In an action against a railroad company, by the owner of stock killed by a train used

The Baltimore, Pittsburgh and Chicago R. W. Co. v. McClellan.

by it in the construction of its road, at a point on the plaintiff's land where the road was not fenced, the defendant offered in evidence, in connection with proof of the date of the completion of the road, a deed containing general covenants of warranty, conveying to the defendant its road-bed across such land, executed by the plaintiff to the defendant prior to the alleged injury, and providing that the defendant should " make a good fence along " its "roadway, on said premises, within a reasonable time after the completion of" said railroad.

*Held*, that the "completion" meant by the terms of such deed was the completion, not of the whole line of road, but simply of the same across the plaintiff's land.

*Held*, also, that such fence should have been built within a reasonable time after the completion of the roadway across such land, and by the time the company commenced running its trains.

*Held*, also, that the evidence was proper.

From the DeKalb Circuit Court.

*S. I. Anthony*, for appellant.

*W. L. Penfield* and *D. D. Moody*, for appellee.

PERKINS, J.—The appellee sued the appellant for the value of a hog and a cow killed by the locomotive and cars of the latter, at a point upon her road where the same was not fenced.

Answer of general denial.

The suit was commenced before a justice of the peace. The plaintiff, the appellee, had judgment before the justice, and, on appeal, in the circuit court.

The evidence is in the record.

John McClellan, being duly sworn, testified as follows:

" I am the plaintiff in this cause, and was the owner of the hog and cow that were killed by the cars of the Baltimore, Pittsburgh and Chicago Railway Company, Indiana Division, for which this suit is brought. I did not see the hog killed; it was in the field, and got up into the cut, and I found it killed and ground up on the railroad track of the defendant. The hog had been marked, and I knew it was my hog. It was worth about ten dollars. It had been struck and carried along several feet. It was killed on the 22d or 23d day of August, A. D. 1874, in DeKalb county, in the State of Indiana. The

defendant's railroad was not fenced there where the hog went upon the track and was killed. I did not allow my hog to run out, but it got out of the field where I kept it, and went upon the track. It was a boar, about two years old. He was killed by a construction train; no regular trains were running on the road at that time. I was the owner of the cow; she was killed on the 26th day of November, 1874. I had her in the north-east corner field. I did not see her killed. From appearances, I think she had been walking along the track, and was caught by the cow-catcher. There was no fence there separating the right of way from my field.. The railroad run through my fields, and the company had not built their fence. My fields were enclosed with a. good fence, and there were cattle-guards where the track crossed my line at the west side and at the east side of' my place. My fences and the cattle-guards prevented stock from getting on the track where the cow was killed, unless they jumped my fence or the cattle-guards. The track passed through two fields of mine. There were no cattle-guards where the fence separating the two fields came up to the track. I turned my cow into one of the fields, and she went into the other field, through the opening in the fence where the road was built, and was killed. I knew the road was not fenced when I turned the cow in the field. The cow was worth fifty dollars. We were making eight pounds. of butter per week then from the cow. She was killed in DeKalb county, in the State of Indiana. Where the cow and hog went upon the defendant's track and were killed, it was not fenced. It was not fenced at all at that time. They were killed by trains used and operated by defendant on her road."

The foregoing testimony states the case of the appellee,. the plaintiff below.

The dates and place will be borne in mind. The hog was killed on the 23d day of August, and the cow on the

26th day of November, 1874. The place was DeKalb county, on the east line of the State.

The bill of exceptions recites, that, "On the trial, the defendant" (appellant here) "offered in evidence the following deed, to wit:

"'This indenture witnesseth, that John McClellan and Matilda McClellan, of the county of DeKalb, and State of Indiana, for the sum of four hundred and thirty-five dollars to them in hand paid, convey and warrant to the Baltimore, Pittsburgh and Chicago Railway Company, Indiana Division, its successors and assigns forever, the following real estate in the county of DeKalb, in the State of Indiana, to wit: A strip or parcel of land one hundred feet wide, being fifty feet in width on each side of the centre line of the boundary roadway of said company, as it is now, or may be, located by said company, in and through the premises, described as follows: Being the west half of the south-west quarter of section number three (3), in township number thirty-three (33) north, of range thirteen (13) east, containing three acres and twenty-one hundredths ($3\frac{21}{100}$), more or less. Said company to make a good fence along their roadway on said premises, within a reasonable time after the completion of their railway, and make said McClellan a good farm crossing, without cattle-guards, at any place they [he] may select, where there is not more than three feet cut or fill, and said McClellan agrees to move their [his] barn and wagon-shed away from the line of said railway, out of danger from fire.

"'In witness whereof the said John McClellan and Matilda McClellan have hereunto set their hands and seals, this 2d day of May, A. D. 1873.

"'JOHN McCLELLAN. [Seal.]
"'MATILDA McCLELLAN. [Seal.]'"

This deed was made on the 2d day of May, 1873, and the cow in question was killed the 26th day of November, 1874, nearly a year and a half after the execution of the

deed, and the hog some sixteen months after. The court refused to admit the deed in evidence. In connection with the deed, the appellant offered to prove that said railroad was not completed till the 16th day of November, 1874, but the court refused to permit such proof to be made. Exceptions were reserved.

The question presented for decision is, did the court err in excluding the deed as evidence, and the proof of the time of the completion of the road?

The deed, in terms, does not release the appellant from liability for killing the appellee's stock. It conveys, for the consideration of four hundred and thirty-five dollars, a strip of ground, on which the railroad of the appellant was to be built, through the farm of the grantor. The following clauses are added:

" Said company to make a good fence along their roadway on said premises, within a reasonable time after the completion of their railway, and make said McClellan a good farm crossing, without cattle-guards, at any place they [he] may select where there is not more than three feet cut or fill, and said McClellan agrees to move their [his] barn and wagon-shed away from the line of said railway, out of danger from fire."

And here a question arises upon the meaning of the term, " completion of their railway," as used in the deed above copied. The appellant contends that it means its completion to Chicago, in the State of Illinois, its western terminus. The appellee claims that it means the completion of the road through his farm. Looking at all the facts in the case, we incline to agree on this point with the appellee. The railway was being constructed from Baltimore, on the Atlantic, westward to Chicago, in Illinois. As fast as it was completed westward from Baltimore, it was operated. DeKalb county is on the eastern border of Indiana, two hundred miles or more east of Chicago. The parties were contracting about the way of the road through the appellee's farm alone.

Said company was "to make a good fence along their roadway on said premises, within a reasonable time after the completion of their railway," on or across said premises, as we read the meaning, and make a crossing, and appellee was to move his barn, etc., out of danger from fire.

To construe the contract as meaning the completion of the road to Chicago would convert it into one encouraging a violation of the law of the land, and into one against public policy, which should favor the safety of travellers and employees upon trains. *The Baltimore, etc., R. W. Co. v. Johnson, ante,* p. 188.

The stipulation in the deed, requiring the road to be fenced within a reasonable time after completion, expressed just what the law required of the railroad company, in the absence of any contract. The statute requiring railroads to fence in their tracks does not fix the time within which the fencing is to take place. In such case, it is held the company must fence within a reasonable time after the completion of the road. *Clark v. The Vermont, etc., R. R. Co.,* 28 Vt. 103; *Holden v. The Rutland, etc., R. R. Co.,* 30 Vt. 297. In *Comings v. Hannibal & Cent. Mo. R. R. Co.,* 48 Mo. 512, the court say: "We think the reasonable construction of the statute is that it requires corporations to have their fences built at least as soon as they commence running their roads." And, when a company commences running a part of their road, before completing the whole, we think the statute should be construed as requiring that part to be fenced.

It follows that the court erred in not allowing proof of the time of the completion of the road. It was necessary, both under the law and the deed, to show that fact. It does not appear by the record, that it is yet completed through the farm of the appellee. Prior to the completion of the road, and the running of trains other than construction trains upon it, through the farm of the appellee, the question, in actions for stock killed,

was not whether the road was fenced; but the questions were, whether there was due care, and whether there was contributory negligence; such questions, in short, as arise in cases of killing at points where the road can not be fenced. *Williams* v. *The New Albany, etc., R. R. Co.,* 5 Ind. 111; *The Indianapolis, etc., R. R. Co.* v. *Harter,* 38 Ind. 557.

The judgment is reversed, with costs, and the cause is remanded for a new trial.